**FIRST NATIONAL BANK OF JOPLIN,**
a National Banking Association,
Plaintiff-Respondent,

v.

Dorothy F. JOHNSON, Defendant-Appellant,

John Joseph Newman, Elsa Caroline Newman Southam, and Paul A. Lux, Executor of the Estate of Albert Newman, Deceased, Defendants-Respondents.

No. 53646.

Supreme Court of Missouri,
En Banc.

Sept. 9, 1968.

Herbert Van Fleet, Joplin, Butler Disman, Herbert Jacob, Kansas City, for respondents, Blanchard & Van Fleet, Joplin, of counsel.

John R. Martin, Joplin, for appellant.

FINCH, Judge.

The First National Bank of Joplin brought a declaratory judgment action seeking a determination of the interests of various claimants under an insurance trust of which the bank was trustee. Opposing claimants to the funds in controversy were Dorothy F. Johnson, divorced wife of Albert Newman, creator of the trust, two children of Newman by a prior marriage, and the executor of Newman's estate. After pleadings were filed, Dorothy F. Johnson filed a motion for summary judgment. The trial court ruled adversely to Mrs. Johnson and she appealed.

The appeal originally was taken to the Supreme Court, but the case was transferred to the Springfield Court of Appeals because it was not demonstrated that the requisite jurisdictional amount was involved. Thereafter, after an opinion by the Springfield Court of Appeals, the case was transferred here on application of some

**66**

of the parties. We now decide the case as though here on original appeal.

Albert Newman and Dorothy F. Johnson were married on August 1, 1962. They separated on January 17, 1963, and shortly thereafter Newman filed suit for divorce in the Circuit Court of Jasper County. His wife filed an answer and cross petition. On July 1, 1963, Newman's petition was dismissed and a divorce was awarded to Mrs. Newman on her cross petition. Her former name of Dorothy F. Johnson was restored. The decree provided for alimony of $250 per month until further order of the court and for $5,000 alimony in gross. Newman was ordered to file security for payment of the alimony, but this was never done.

Meanwhile, a property settlement agreement had been drafted by the parties. It was dated June 28, 1963, and was signed by Mrs. Newman prior to July 1. It was signed by Albert Newman on July 1, 1963, after the divorce decree had been entered. This agreement provided that Newman was to pay $250 per month as alimony, to continue until further order of the court. It also provided for $5,000 alimony in gross, and Mrs. Newman was to convey certain property to Newman by quitclaim deed. It further provided that Newman, in order to secure payment of the $250 per month, would assign irrevocably income in the amount of $250 per month during his lifetime from the Elsa Newman Trust and would place life insurance policies in trust to provide for payment of the monthly sum after his death. Payments to the wife were to terminate in the event of remarriage.

A copy of the property settlement agreement was filed with the Circuit Clerk on July 3, 1963. The divorce decree entered on July 1st made no reference to that contract, nor was it mentioned in the entries on the judge's docket.

On September 25, 1963, Albert Newman, as donor, and the bank, as trustee, executed the insurance trust agreement which we are now asked to construe. Various life insurance policies on Newman's life were listed in a schedule which was a part of the trust agreement, and those policies were delivered to the bank as trustee.

The trust agreement, after providing that the bank was to hold the policies and collect them upon the death of Newman, set out three paragraphs dealing with disposition of trust funds, as follows:

1. Paragraph 4 provided for payment of a proportionate share of estate and inheritance taxes on Newman's estate if his executor so requested.

2. Paragraph 5 was as follows: "Upon the death of Donor, the Trustee shall pay to Dorothy F. Johnson, the sum of Two Hundred and Fifty Dollars ($250.00) per month for so long as the said Dorothy F. Johnson shall live and remain unmarried. Said payments to be payable solely from available trust funds."

3. Paragraph 6 provided that "upon the death of Dorothy F. Johnson, or the termination of her interest herein", the trustee should divide the funds into two trusts, one for each of the children of Albert Newman.

Albert Newman died on March 23, 1965, and the bank proceeded to collect on the insurance policies. It had collected all but one at the time this suit was filed.

Dorothy Johnson made claim on the bank as trustee for the sum of $250 per month commencing upon the death of Albert Newman. She claimed that she was entitled to receive such monthly payment so long as she should live and remain single. The children of Newman and the executor of his estate, on the other hand, claimed the trust instrument was intended merely to secure payment of periodic alimony awarded in the decree of divorce. They say that under paragraph 5 of the trust Dorothy Johnson was entitled only to payment from trust funds of any accrued monthly installments of statutory alimony which were

unpaid at the death of Newman. Three such installments, totalling $750, were unpaid at that time.

The answers of all defendants admitted allegations in the bank's petition that Albert Newman executed the insurance trust in question; that the insurance policies enumerated therein were endorsed so as to name the bank as beneficiary and were deposited with it as trustee; that all policies except one had been collected; that "paragraph 5 of said insurance trust agreement provides that upon the death of Albert Newman the plaintiff as trustee shall pay to defendant Dorothy F. Johnson the sum of Two Hundred and Fifty Dollars ($250.00) per month for so long as the said Dorothy F. Johnson shall live and remain unmarried"; that upon the death of Dorothy F. Johnson or termination of her interest the trust property was to be divided into two trusts, one for the benefit of each of the Newman children; and that there was provision for payment out of trust funds of a pro rata share of the estate and inheritance taxes on the Albert Newman estate.

After the pleadings were made up, Dorothy F. Johnson filed a motion for summary judgment, pursuant to Supreme Court Rule 74.04, V.A.M.R. Certain affidavits, counter affidavits and admissions were filed.

The trial court denied the motion of Dorothy F. Johnson for summary judgment in her favor but instead entered summary judgment in favor of the respondents, holding that the trust agreement merely secured any unpaid installments of statutory alimony which had accrued prior to Albert Newman's death, and that the amount due Dorothy F. Johnson was $750. The decree directed the trustee to pay a portion of the estate and inheritance taxes on a prescribed formula. It further directed the trustee, after payment of $750 to Dorothy F. Johnson and other expenses such as attorneys' and trustees'

fees, to set up the balance of funds on hand in two separate trusts for the two Newman children, pursuant to paragraph 6 and certain other provisions of the trust instrument. The court reserved for future determination certain questions such as the amounts of fees and expenses. The attack on said judgment on appeal by Dorothy Johnson is limited to that portion relating to her right to receive monthly payments of $250 so long as she lives and remains unmarried. No contest exists relative to payment of a pro rata share of taxes.

We have concluded that the judgment of the Circuit Court should be reversed and the cause remanded for entry of a judgment consistent with the views herein expressed.

The ultimate issue for determination is the meaning and effect of paragraph 5 of the trust agreement. "In our determination of the grantor's intent we are to give the words used their usual, ordinary and natural meaning in the absence of anything in the instrument to deflect from that meaning, 90 C.J.S. Trusts § 161 h(1), p. 24, but the instruments must be construed to avoid, if possible, repugnancy in the various provisions, and, as it has been tritely said, the provisions must be construed in the light of the entire instrument considered from its four corners." Commerce Trust Company v. Starling, Mo., 393 S.W.2d 489, 494.

The provisions of paragraph 5 of the trust instrument are clear and explicit. The "usual, ordinary and natural meaning" of the words used is that commencing with the death of Albert Newman, the bank, out of funds collected on the insurance policies as a result of Newman's death, should pay $250 per month to Dorothy F. Johnson so long as she should live and remain unmarried. We must, however, look to the rest of the instrument and determine whether other provisions are such as to cause a conclusion that the instrument as a whole produces a different interpretation

of the language of paragraph 5. Commerce Trust Company v. Starling, supra.

Respondents point to the language in the preamble to the trust agreement wherein the donor expressed the desire to create "an irrevocable trust estate for the payment of certain sums of money to Dorothy F. Johnson, under the terms of a divorce decree of the Circuit Court of Jasper County, Missouri". They also refer to language in paragraph 2 of the trust instrument which provided that the donor was required to pay premiums only to the extent necessary to keep sufficient insurance policies in effect "to provide adequate security under said decree of divorce to Dorothy F. Johnson".

Both of the above provisions, respondents say, indicate that the trust instrument was tied to and merely security for obligations imposed by the divorce decree. It follows, they assert, that Dorothy Johnson can have no greater rights under the insurance trust than she had under the divorce decree. They then conclude that when the trust instrument and the divorce decree are construed together as parts of the same plan, paragraph 5 means that when Newman died, Dorothy Johnson was entitled to payment out of trust funds of any monthly alimony installments which had accrued in Newman's lifetime but were unpaid at his death and nothing else. In short, respondents' position would mean that the insurance trust agreement provided that the trustee would collect the insurance policies and then immediately fund the trusts for the two Newman children under paragraph 6, first paying a pro rata share of taxes and any unpaid alimony installments to Dorothy Johnson which had accrued prior to Newman's death.

We reject this interpretation. The language in the preamble is merely background or explanation for execution of the trust agreement. It does not spell out or purport to limit obligations of the trustee or precise rights of the beneficiaries. Likewise, the reference in paragraph 2 to Newman's obligation to pay insurance premiums does not define either rights of the beneficiaries or obligations of the trustee. Neither provision is sufficient to cause us to modify or nullify plain and clear language set out in paragraph 5. That paragraph makes no reference to alimony. It does not mention the divorce decree. It does not provide for payment of sums which accrued prior to the death of Newman. Instead, it clearly says that Dorothy Johnson shall receive $250 per month commencing upon Newman's death and that this shall be true so long as she shall live and remain unmarried. It would do violence to the language to interpret it as saying that Mrs. Johnson is limited to payment of any monthly installments of $250 which accrued prior to Newman's death even though she continued to live thereafter and remained unmarried.

While we do not base our decision on language used by Albert Newman in a motion which he filed in the divorce proceeding, it is of interest to note that Newman himself recognized therein that the trust instrument was intended to provide for payments beyond his life. In that motion, filed after he had paid alimony for eighteen months, Newman sought to vacate the award of alimony or, in the alternative, to modify the same. He recited that he, "under the mistaken belief that he was required to do so, arranged to place certain life insurance policies on his life in trust to secure payment of said periodic alimony beyond his life". Newman recited that he should be authorized to revoke the trust, but this motion was never acted upon. The trust was never revoked or modified.

If, as respondents contend, the insurance trust was intended to limit the rights of Dorothy F. Johnson therein to unpaid alimony installments at the time of Albert Newman's death (a position with which we do not agree for reasons indicated), then we can say only that the contract as

written did not provide what was intended, and this court cannot rewrite the agreement for the parties. Actually, the parties all concede that the trust instrument is valid and should be enforced. They differ only as to their interpretation as to the meaning of the trust provisions and the rights created thereunder.

It is our conclusion that the provisions of the insurance trust agreement itself spell out the obligations of the trustee and the rights of the beneficiaries and that we need not look either to the divorce decree or to the property settlement agreement for the purpose of construing the trust agreement or determining the rights of Dorothy F. Johnson thereunder. We, of course, are not concerned with the enforcement of the divorce decree or the property settlement contract, nor are we concerned with which would take precedence over the other if that issue were presented. Those questions simply are not involved in a determination of this case.

The trial court found that a motion for summary judgment was appropriate. Respondents concede in their brief that "no genuine issue exists in this case as to any material fact". We agree. Accordingly, the judgment of the Circuit Court is reversed and the cause remanded with directions to dispose of such matters as were reserved for future determination, and thereafter to enter a judgment construing the trust agreement as providing for monthly payments of $250 to Dorothy F. Johnson commencing with the death of Albert Newman and continuing thereafter so long as Dorothy F. Johnson shall live and remain unmarried.

HOLMAN, C. J., HENLEY, EAGER, DONNELLY and STORCKMAN, JJ., and HOWARD, Special Judge, concur.

SEILER, J., not sitting.